By the Court.
Campbell, J.
The question presented for our consideration is, whether common carriers can by special contract restrict their liabilities for losses which occur otherwise than by the act of God or the public enemies. If the point were, now for the first time raised, we should have considered it, if not entirely free from difficulty, at least as not leaving much room for doubt as to the correctness of the conclusion at which we have arrived. The judgment of a majority of the late supreme court, pronounced in the case of Gould v. Hill, 2 Hill’s R. 623, was cited and urged on the part of the plaintiffs as settling the law in this state, that a common carrier cannot, by special contract, limit his liability. Though the court was divided in opinion, the cause does not seem to have been carried to the court for the correction of errors, and we are not therefore sure of what would have been the decision of the court of last resort. But the clear conviction of all of us, that the case of Gould, v. Hill was not correctly decided, supported as we are by the supreme court of the United States, (Merchants’ Bank v. New Jersey Steam Navigation Company, 6 Howard, 344,) and the great importance of the question to4a commercial people, especially *142 the importance of uniformity between the courts of the State and Union, in the rules of law regulating commercial transactions, compel us respectfully to dissent from the judgment in that case.
We entirely concur in the conclusion at which that court arrived in the case of Hollister v. Nowlen, and Cole v. Goodwin, (19 Wendell, 234 and 251,) that stage-coach proprietors, as common carriers, are answerable for the baggage of passengers, that they are regarded as insurers, and cannot restrict their common law liability by a general notice that the baggage of passengers is at the risk of the owners. The power of a common carrier to restrict his liability by a general notice, whether brought home or not to the knowledge of the owner of the property, is discussed at great length, and with distinguished ability and learning, by Justices Bronson and Cowen in these cases. In Hollister v. Nowlen, Mr. Justice Bronson, referring to the opinion of Lord Ellenborough in Nicholson v. Willan, (5 East. 507,) says: “Although this mode of reasoning is not the most conclusive, I shall not deny that the carrier may, by express contract, restrict his liability; for though the point has never been expressly adjudged, it has often been assumed as good law citing Aleyn, 93, 4 Co. 84, note to Southcote’s case, 4 Burr. 2301, per Yates, J., 1 Vent. 190, 238, Peake N. P. Cas. 150, 2 Taunton 271, and 1 Starkie R. 186. In the case of Nicholson v. Willan, Lord Ellenborough says: “ But considering the length of time during which, and the extent and universality in which, the practice of making such special acceptances of goods for carriage by land and water has now prevailed in this kingdom, under the observation and with the allowance of courts of justice, and with the sanction also and countenance of the legislature itself, which is known to have rejected a bill brought in for the purpose of narrowing the carrier’s responsibility in certain cases on the grounds of such a measure being unnecessary, inasmuch as the carriers were deemed fully competent to limit their own responsibility in all cases by special contract; considering also that there is no case to be met with in the books, in which the right of a carrier thus to limit by special contract his own re *143 sponsibility has ever been by express decision denied,” &c. So it was- also said by Lord Ellenborough, in Kerr v. Willan, (2 Starkie R. 58): “ The hardship of the case cannot alter the liability of the party. By the common law, the carrier is responsible for the loss of the goods, unless he enter into a special contract by which he limits that responsibility.”
And in the same case, on a motion for a new trial, the court say: “ No doubt the rule of law might be superseded in the particular case by a special contract, since modus et conventio vincunt legem.”
So in 1 Bell’s Commentaries, 5 Ed. 472, the author remarks: “ It seems to admit of no doubt that, as matter of contract, carriers, innkeepers, stablers and others, may, with the consent of those who employ them, undertake only certain risks and responsibilities.”
In the case of the Merchants’ Bank v. New Jersey Steam Navigation Co., (6th Howard, U. S. Rep. 344,) Mr. Justice Nelson says, “ As the extraordinary duties annexed to his employment, concern only in the particular instances the parties to the transaction, involving simply rights of property, the safe, custody and delivery of the goods, we are unable to perceive any well-founded objection to the restriction, or any stronger reasons forbidding it, than exist in the case of any other insurer of goods to which his obligation is analogous, and which depends altogether upon the contract between the parties.” Mr. Justice Daniel, in the same case, remarks: “But a carrier may, in a given case, be exempted from liability for loss without fraud, by express agreement with the person for wj|om he undertakes for I cannot well imagine a principle creating a disability in a particular class of persons to enter into a contract fraught with no criminal or immoral element, a disability indeed extending injuriously to others who might find it materially beneficial to make a contract with them.” In Gordon & Walker v. Little, (8th Sergeant & Rawle, 533,) where the suit was against the defendant as a common carrier, and where there was an exception in the bill of lading of the dangers of the river, &c., Chief J. Tilghman says: “If ’the case had rested solely on the written *144 contract, there would have been much to say in favor of the decision of the court, because, be the common law what it may, the parties have a right to alter or modify it by special contract, and when they have done so, the question is, what is the construction of the contract?”
In the decision of the case of Gould v. Hill, Mr. Justice Cowen refers to his opinion in the case of Cole v. Goodwin, as containing his reasons for that decision, re-affirming the position that there is no difference between a special, acceptance or special contract, and a notice brought home to the owner of the goods, except in the evidence by which the responsibility of the parties is shown. This position was denied by the supreme court of the United States in the case of the New Jersey Navigation Company and Merchants’ Bank; and also by Mr. Justice Bronson, in the case of Hollister v. Nowlen, where he says: “ But conceding that there may be a special contract for a restricted liability, such a contract cannot, I think, be inferred from a general notice brought home to the employer. The argument is, that where a party delivers goods to be carried, after seeing a notice that the carrier intends to limit his responsibility, his assent to the terms of the notice may be implied. But this argument entirely overlooks a very important consideration. Notwithstanding ■ the notice, the owner has a right to insist that the carrier shall receive the goods subject to all the. responsibilities incident to his employment. If the delivery of goods under such circumstances authorizes an implication of any kind, the presumption is as strong, to say the least, that the owner intended to insist on his legal rights, as it is that he was willing to yield to the wishes of the carrier.”
It is said that1 there may be an implied special contract, where the carrier’s notice is brought home to the bailor, and the assent of the latter can be presumed; that there is an express special contract, where the contents of the notice are reduced to the form of a contract, and the express assent of the owner of the goods is given. While the courts of England have recognized the former, and'have given to it force in favor of the carrier, the courts of this state have rejected it; but the power- and right *145 of a carrier to limit his liability by an express special contract, as before observed, has been denied only in the case of Gould v. jKill. A common carrier has in truth two distinct liabilities, the one for losses by accident or mistake, where he is liable, by "the custom of the realm or the common- law, as an insurer; -the other for losses by default or negligence, where he is'answerable as an ordinary bailee. It would certainly seem but reasonable, that he might, by express special contract,' restrict his liability as insurer, that he might protect himself against misfortune, even though public policy should require that he should not be permitted to stipulate for impunity where the loss occurs from his own default or neglect of duty. - - Such we understand to be the doctrine laid down in the case of the New Jersey Steam Navigation Co. v. Merchants’ Bank, in 6th Howard, and such we consider to be the law in the present case. The right and the power to make such contracts is for the benefit.of all parties. The-owner of the-goods may prefer-to select his own insurer. He may have confidence -in the-integrity and good faith of the carrier, and that, his property- will - not be lost through default or neglect, -when' he* knows that; in case of its destruction by fire or other calamity, the carrier will-be unable to respond for the loss; If no contract'-can be made, he must pay the carrier for his risk as insurer, and he- must, also-pay a premium to others for his protection against the same loss-for which the carrier stands responsible.
It may be remarked that the act of 1 William TY.;' eh. 68, passed in 1830, while it declares that no public -notice or declaration shall be construed to limit or in any wise affect' the liability, at common law, of common -carriers, with a single exception, also provides that nothing in the act shall extend or be construed to annul, or in any wise affect; any special ■ contract between such common- carriers and any- other parties for the conveyance of goods and merchandise. If the courts--of -England had departed from the old rule of the common law, by giving effect to notices, the statute has restored the' rulé, and in doing so expressly recognizes the power'to make special "contracts.
*146 The necessity of allowing common carriers upon the seas to make special contracts with the owners of property committed to their care, was early seen and recognized, and exceptions in bills of lading restricting the carriers’ liability, have from time to time been added. The same necessity exists as to the domestic commerce in this vast country of ours, where the internal trade is so extensive, reaching, as it does, over the greater part of a continent, traversing rivers in length equal to the distance across the Atlantic, stretching out over large inland seas, where the amount of property annually carried has swollen up to hundreds upon hundreds of millions of dollars — where there exist extensive lines of transportation, reaching through different states, and controlled in different parts by the several owners, and where insurance, companies are organized for the protection of the owners of the property thus transported.
It will at once be seen how important it is, that the law which regulates the duties and liabilities of those who are the owners and the carriers of this property, should be uniform throughout all the states; and when once an important question like the present is settled by the supreme oourt of the United States, there should be a conformity as far as practicable. In this case, if we were to follow the ruling in the case of Gould v. Hill, we should do so with the full knowledge, that if the case upon the same pleadings was in the other end of this hall, the judgment would be in favor of the defendants.
It is not necessary to discuss the question, whether a bill of lading is evidence of a special contract, or when accepted by the owner forms such special contract. It has been so held, but the pleadings in this case admit that it does constitute a special contract.
We are all of opinion that a common carrier may, by an express special contract, limit or restrict his common law liability as an insurer for the safe transportation and delivery of goods intrusted to him.
The judgment must be for the defendants on the demurrer; but with liberty to the plaintiffs, on payment of costs, to withdraw their demurrer, and reply.